UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ADVANCED MEMORY TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MICRON TECHNOLOGY, INC.,<br><br>Defendant. | Case No. 1:26-cv-00420-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant's Motion to Disqualify Plaintiff's Expert Dr. Martin G. Walker (Dkt. 82). Defendant Micron Technology, Inc. seeks to exclude and disqualify Plaintiff Advanced Memory Technologies, LLC's (AMT) expert in the case because of an alleged confidential relationship between Micron and Dr. Walker. For the reasons explained below, the Court will deny the motion.

## BACKGROUND

AMT brought this patent infringement action in the Western District of Texas, alleging that Micron manufactures and sells NAND flash memory and dynamic random access memory (DRAM) modules that infringe AMT's asserted

patents. *Am. Compl.*, Dkt. 33, at 5. In July 2026, the Western District of Texas transferred the case to this District, where Micron is headquartered. *See* Dkt. 92.

Micron asks the Court to disqualify Dr. Walker as AMT's expert in the case. *Mot. Disqualify*, Dkt. 82, at 1. It alleges that Dr. Walker was Micron's own testifying expert in a prior DRAM patent infringement case where Dr. Walker reviewed sensitive proprietary information regarding the circuity at issue here. *Id.* AMT opposes the motion, arguing that the type of information that Micron identifies is not the type of confidential information that the expert-disqualification doctrine exists to protect. *Opp'n Mot. Disqualify*, Dkt. 83, at 5.

## LEGAL STANDARD

"Federal courts have the inherent power to disqualify expert witnesses to protect the integrity of the adversary process, protect privileges that otherwise may be breached, and promote public confidence in the legal system." *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004) (citing *Campbell Indus. V. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980)). Disqualification, however, "is a drastic measure that courts should impose only hesitantly, reluctantly, and rarely." *Hewlett-Packard*, 330 F. Supp. 2d. at 1092.

In determining whether to disqualify an expert based on a prior relationship with an adversary, courts should disqualify an expert if "(1) the adversary had a

confidential relationship with the expert and (2) the adversary disclosed confidential information to the expert that is relevant to the current litigation." *Id.* Both factors must be met for disqualification to be granted. *Id.* If both factors are met, courts should also consider whether disqualification would be fair to the affected party and would promote the integrity of the legal process. *Id.* The moving party bears the burden of showing that disqualification is warranted. *Id.*

## ANALYSIS

### 1. Confidential Relationship

First, the Court considers whether Micron reasonably believed that it had a confidential relationship with Dr. Walker.

The party seeking disqualification must show that "it was reasonable for it to believe that a confidential relationship existed, and, if so, whether the relationship developed into a matter sufficiently substantial to make disqualification or some other judicial remedy appropriate." *Id.* (citations omitted). In evaluating the reasonableness of that belief, the Court may consider many factors, including whether the relationship was long-standing and involved frequent contacts and whether the parties entered into a formal confidentiality agreement. *Id.* (citations omitted).

Micron retained Dr. Walker from 2013 to 2016 as its testifying witness in *HSM portfolio LLC v. Fujitsu*, Case No. 11-cv-77-RGA (D. Del), a patent infringement case involving some of Micron's DRAM products. *Mot. Disqualify*, Dkt. 82, at 3. Micron engaged Dr. Walker through its outside counsel at Weil, Gotshal & Manges, *id.* at 6, and paid Dr. Walker at a rate of $475 an hour. *Walker Report*, Dkt. 82-1, at 4. Dr. Walker's own curriculum vitae lists the engagement and identifies Micron as his client. *See Walker CV*, Dkt. 82-2.

As a testifying expert in the *HSM* case, Dr. Walker studied internal schematics across more than thirty of Micron's DRAM products, reviewed engineers' deposition testimonies, and submitted an expert report exceeding 1,000 numbered paragraphs. *See Walker Report*, Dkt. 82-1. Additionally, Dr. Walker performed this work under a written confidentiality agreement and protective order. *Mot. Disqualify*, Dkt. 82, at 4.

Given the length of Dr. Walker's engagement with Micron, and the existence of a confidentiality agreement, the Court concludes that it was reasonable for Micron to believe that a confidential relationship existed.

**2. Disclosure of Confidential Information.**

The Court next considers whether Micron disclosed confidential information to Dr. Walker that is relevant to this case.

Confidential information in this context means information "of either particular significance or [that] which can be readily identified as either attorney work product or within the scope of the attorney-client privilege." *Hewlett-Packard*, 330 F. Supp. 2d at 1094. It could include discussion of the party's "strategy in the litigation, the kinds of experts [the party] expected to retain, [the party's] views of the strengths and weaknesses of each side, the role of each of the [party's] experts to be hired and anticipated defenses." *Id.* at 1094.

Thus, some courts have concluded that "[c]ommunication based upon technical information as opposed to legal advice is not considered privileged." *Nikkal Indus., Ltd. v. Salton, Inc.*, 689 F. Supp. 187, 191–92 (S.D.N.Y. 1988); *see also Sarl v. Sprint Nextel Corp.*, 2013 WL 501783, at *6–7. (D. Kan. 2013) (rejecting the argument that an expert witness who received confidential technical information should be disqualified). "Unlike attorney-client communications, discussions between parties or counsel and experts do not carry the presumption that confidential information was exchanged." *Hewlett-Packard*, 330 F. Supp. 2d at 1094.

Micron argues that the accused DRAM portfolio in this case includes many of the same DRAM products that Dr. Walker studied in the *HSM* case. *Mot. Disqualify*, Dkt. 82 at 4. It contends that Dr. Walker "will draw . . . on a decade-old

reservoir of proprietary Micron knowledge that he acquired only because Micron entrusted him as its expert." *Id.* at 8.

Converserly, AMT says that Micron has failed to identify any specific confidential information that warrants disqualification. *Opp'n Mot. Disqualify*, Dkt. 83, at 7. Highlighting a distinction between "confidential technical information" and "confidential *privileged* information," AMT argues that Micron's disclosures to Dr. Walker fall within the former category. *Id.* at 8 (emphasis in original).

Indeed, some courts have distinguished between confidential technical information and confidential privileged information when deciding whether to disqualify an expert. *See, e.g.*, *Koch Refin. Co. v. Jennifer L. Boudreau M.V.*, 85 F.3d 1178, 1182 (5th Cir. 1996) (noting that "purely technical information is not confidential"); *AstraZeneca LP v. Breath Ltd.*, 2011 WL 13398720, at *4 (D.N.J. 2011) (finding that expert disqualification appropriate "where the confidential information consists of attorney-client privilege information, material protected by the work product doctrine, or is otherwise confidential material specifically related to the product at issue in the litigation").

Here, the distinction weighs against disqualification. Micron has failed to show that Dr. Walker was made privy to any aspects of Micron's litigation strategy

in the *HSM* case, except to say that Dr. Walker's preparation "would have necessarily involved intimate coordination with Micron's counsel." *Reply*, Dkt. 88, at 3. Moreover, Micron is now represented by different counsel, which undermines the contention that Dr. Walker received privileged information about litigation strategy that would be relevant in this action.

At the same time, Micron correctly notes that the above-mentioned cases do not limit "confidential information" to litigation, strategy, attorney-client communications, and work product. *See id.*, at 1. *Hewlitt-Packard*, for example, states that confidential information includes information "of particular significance," 330 F. Supp. 2d at 1094, while *AstraZeneca* says it encompasses that which is "specifically related to the product at issue in the litigation." 2011 WL 13398720, at *4. Relying on this language, Micron contends that Dr. Walker reviewed confidential information related to the very products at issue in this case. Reply, Dkt. 88, at 2.

But even assuming that "confidential information" is broader than AMT would have it, the fact remains that the *HMS* case involved four different patents, none of which is being asserted here. *See Walker Report*, Dkt. 82-2, at 25. What is more, the patents in *HMS* were directed to different technologies—buffers, latches, sense amplifiers, and logic circuits. *Id.* This case, by contrast, revolves around

patents directed toward booster circuits, charge pumps, and voltage regulators. *See Am. Compl.*, Dkt. 33, at 5–8.

In sum, Micron has failed to identify information of either "particular significance" or which can be identified as either "attorney work product" or "within the scope of the attorney client privilege." Consequently, the Court concludes that Micron has failed to show that it disclosed any confidential information to Dr. Walker as that term has been construed in the context of expert disqualification.

**3. Fairness and Integrity of the Legal Process**

Because Micron has not met the confidential information prong, the Court need not consider other policy concerns, including whether disqualification would be fair to the affected party and promote the integrity of the legal process. But even if Micron had shown that it had disclosed confidential information to Dr. Walker, these concerns would weigh against disqualification.

"The policy objectives favoring disqualification include preventing conflicts of interest and maintaining the integrity of the judicial process." *English Feedlot, Inc. v. Norden Labs., Inc.*, 833 F. Supp. 1498, 1504. "The main policy objectives militating against disqualification are ensuring that parties have access to expert

witnesses who possess specialized knowledge and allowing experts to pursue their professional calling. *Id.* at 1504–05.

Micron argues that permitting Dr. Walker to serve as AMT's expert in this case would "send precisely the wrong signal" and suggest that "an expert may turn a former client's confidences against it so long as the patents in the case bear different numbers." *Mot. Disqualify*, Dkt. 82, at 8. By contrast, AMT contends that the "remoteness" of the prior engagement reinforces the conclusion that disqualification is unwarranted in this case. *Opp'n Mot. Disqualify*, Dkt. 83, at 7.

The Court agrees with AMT that the remoteness of Dr. Walker's engagement with Micron weighs against disqualification. The engagement concluded ten years ago, and Dr. Walker has worked on more than fifty matters since then. *See Walker CV*, Dkt. 82-2. The fact that the parties' stipulated protective order requires a disclosing party to identify its expert's prior consulting relationships for the past *five* years lends additional support to the proposition that ten years is sufficiently remote. *See Stipulated Protective Order*, Dkt. 50, at 20.

Finally, Dr. Walker possesses specialized knowledge regarding the type of patents at issue. He has a Ph.D. in electrical engineering from Stanford University and boasts over forty years of experience in the design of integrated circuits. *Id.*

During his consulting career, Dr. Walker has been engaged in dozens of matters involving patent infringement claims. *Id.*

In short, the Court finds that the policy objectives militating against disqualification predominate. Micron is therefore not entitled to the "drastic measure" of Dr. Walker's disqualification, which the Court should impose only "hesitantly, reluctantly, and rarely."

**ORDER**

**IT IS ORDERED that** Defendant's Motion to Disqualify Plaintiff's Expert Dr. Martin G. Walker (Dkt. 82) is **DENIED**.

DATED: August 31, 2026

B. Lynn Winmill
U.S. District Court Judge